UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA :

- v. - :

DWAYNE MAYES, :

Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S SENTENCING MEMORANDUM**

07 Cr. 488 (LAK)

**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**

MICHAEL J. GARCIA
*United States Attorney for the Southern District of New York*
*Attorney for the United States of America*

RANDALL W. JACKSON
Assistant United States Attorney,
*Of Counsel*



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 21, 2008

**BY ECF**

Honorable Lewis A. Kaplan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: United States v. Dwayne Mayes
07 Cr. 488 (LAK)

Dear Judge Kaplan:

The Government respectfully submits this letter in advance of the sentencing of Dwayne Mayes (the "defendant"), which is scheduled for Friday, February 22, 2008, at 11 a.m.

**Offense Conduct**

As described in more detail in the Presentence Report, from 1998 through 2006, the defendant received Section 8 housing subsidies to which he was not entitled. (PSR ¶¶ 11–20). The defendant received these subsidies as a participant in the Section 8 Rental Assistance Program that is administered by the New York City Housing Authority ("NYCHA"). (PSR ¶ 6). NYCHA's Section 8 Housing Program is, and was at all times relevant to this case, entirely funded by the U.S. Department of Housing and Urban Development ("HUD"). (PSR ¶ 6). The defendant was ineligible for a significant portion of the subsidies he received as a result of substantial income that he received and failed to report to NYCHA. (PSR ¶ 14 – 19).

From January of 2001 through October of 2004, the defendant worked at the Research Foundation for Mental Hygiene, Inc., earning a total of $152,480.00 that was not reported to NYCHA. (PSR ¶ 17). From October of 2004 through 2006, the defendant worked at

the Research Foundation at the City University of New York, earning a total of $99,559.[1] An initial investigation by the New York City Department of Investigation also revealed that the Social Security Administration had paid the defendant approximately $30,000 in Social Security benefits that were unreported to NYCHA. However, as described in the defendant's sentencing submission, the Government has recently received documentation which demonstrates that the defendant was not actually paid any Social Security income in these years; Social Security records that were initially examined by NYCHA apparently reflected income that was scheduled to be paid to the defendant, but was not actually paid. The Government's recalculation of the total loss amount, as a result of this discrepancy, reveals that the accurate loss amount applicable to the defendant is $26,586, an amount that is approximately $15,000 lower than the loss amount described in the PSR. (PSR ¶ 27).

**Guidelines Calculation**

The base offense level for the defendant's crime is 6, pursuant to U.S.S.G. § 2B1.1(b). (PSR ¶ 26). Based on the loss amount initially calculated by NYCHA, $41,166, the PSR concluded that the offense level should be increased by 6 levels, pursuant to U.S.S.G. § 2B.1.1(b)(1)(D). (PSR ¶ 27). In light of the correct loss amount, however, the offense level should be increased only by 4 levels. *See* U.S.S.G. § 2(b)(1)(C). No other adjustments are applicable; therefore the total offense level is 8, a two-point reduction from the total offense level calculated in the PSR. (PSR ¶ 35).

The PSR correctly calculates the defendant's criminal history category is II, as a result of a 1995 narcotics conviction and the defendant's execution of the fraud scheme described above while on a term of probation. (PSR ¶¶ 38 – 43); U.S.S.G. §§ 4A1.1(d) and 4A1.2(e)(2).

Based on the total offense level of 8 and a criminal history category of II, the applicable Guidelines range is 4 – 10 months.

**Discussion**

The United States Sentencing Guidelines (the "Guidelines") still provide strong guidance to the Court in light of *United States* v. *Booker*, 543 U.S. 220 (2005) and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it held also that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court recently stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark." *Gall* v. *United States*, — S. Ct. —, 2007 WL 4292116, at *7 (Dec. 10, 2007).

---

[1] Though the PSR's descriptions of the amount of loss initially calculated by NYCHA are accurate, Paragraph 17 of the PSR fails to describe the defendant's unreported income between late 2004 and 2006. The Government submits this information as additional background for the Court.

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1)); the four legitimate purposes of sentencing (§ 3553(a)(2)); "the kinds of sentences available" (§ 3553(a)(3)); the Guidelines range itself (§ 3553(a)(4)); any relevant policy statement by the Sentencing Commission (§ 3553(a)(5)); "the need to avoid unwarranted sentence disparities among defendants" (§ 3553(a)(6)); and "the need to provide restitution to any victims" (§ 3553(a)(7)). *Gall* v. *United States*, 2007 WL 4292116, at *7.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Courts may not presume that the appropriate sentence necessarily lies within Guidelines range, but "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 2007 WL 4292116, at *7 n.6. Their relevance throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 127 S. Ct. 2456, 2463 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 2007 WL 4292116, at *6; *see also Rita* v. *United States*, 127 S. Ct. at 2464. To the extent a sentencing court varies from the Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 2007 WL 4292116, at *7.

Here, where the offense level is 8, and the Criminal History Category is II, the Guidelines range is 4-10 months' imprisonment, and the Guidelines provide that range may be satisfied by a term of imprisonment within that range, a combination of imprisonment and other types of confinement (such as home detention), or "a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment" for at least six months. U.S.S.G. § 5C1.1(c), (e) & comment. (n.3).

Here, the factors described in 18 U.S.C. § 3553(a) militate in favor of a Guidelines sentence. In particular, the need for general deterrence, the need for the sentence to reflect the seriousness of the offense, and the need to promote respect for the law are implicated in this case. The Section 8 program provides critical assistance to some of the most vulnerable families in the United States. The program's importance in New York City is amplified by the high local cost of housing and the relative scarcity of affordable housing. Abuses of the program, as a result, come at a high cost to the public and are simultaneously difficult to detect. A sentence within the Guidelines range will have important deterrent effects.

**Conclusion**

For the foregoing reasons, the Government respectfully submits that a sentence within the Guidelines range, including a possible period of home detention, would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By: /s/
Randall W. Jackson
Assistant United States Attorney
212-637-1029

cc: Xavier Donaldson, Esq.